[No. 12015–1–II.   Division Two.   March 14, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD A. GRECO, *Appellant.*

*Monte E. Hester* and *Wayne C. Fricke,* for appellant.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *Gregory P. Canova, Special Deputy,* for respondent.

REED, J.—Richard Greco, former Pierce County Auditor, appeals his Pierce County bribery and official misconduct convictions. We affirm the misconduct conviction. Because the bribery findings of fact are inadequate, we vacate those convictions and remand for further findings.

A special inquiry, attended by then Pierce County Prosecuting Attorney William Griffies, was held to gather evidence regarding allegations of Greco's misconduct. After the inquiry the State charged Greco with several counts of bribery under RCW 9A.68.010(1)(b) and official misconduct under RCW 42.20.010(1) and (2). The State alleged that Greco accepted bribes for awarding vehicle licensing subagencies to particular persons. Greco also was charged with providing county employees as messengers for an agency in return for payments which he pocketed, a violation of RCW 42.20.010(3).

The counts involved three agencies and five individuals: Walter Robb, Howard Forbes, Dena and David McCallum (the Forbes/McCallum agency), and Mead McDonald. The court, sitting without a jury, convicted Greco of nine bribery counts and one official misconduct count. He was acquitted of the remaining counts.

Bribery counts 3 (1983–1984) and 4 (1985) involved Robb. Robb believed that Greco would close agencies that did not contribute moneys for his campaign fund or as Christmas gifts. Robb paid Greco $400 in 1984 after having trouble with Greco's office and receiving Greco's call that Greco had not received his 1983 payment. Robb also paid Greco $500 in 1985.

Bribery counts 8 (1982), 9 (1983), and 11 (1985) involved the Forbes/McCallum agency. In 1982 Forbes paid Greco $250, understanding that the payment was to dissuade Greco from permitting the establishment of competing agencies. Afterward, Greco called Forbes and said "Howard you are short." Forbes then paid Greco an additional $250. Forbes also paid $500 in 1983.

Greco told Dena McCallum that the arrangement was $500 for the yearly payment and $1,500 for messenger service. Her agency paid Greco $2,000 in 1985: a $500 Christmas payment and $1,500 for messenger service. The agency made the Christmas payment because Greco talked of authorizing a competing agency. A county employee testified that he collected paperwork from the agency. Greco returned the $2,000, saying he did not need it just then, but later asked for $500, which David McCallum paid. The court found Greco guilty of official misconduct (count 12) for using a person in his employ for his personal benefit, in violation of RCW 42.20.010(3).

Bribery counts 13 (1981), 14 (1982), 15 (1984), and 16 (1985) involved McDonald. McDonald paid unknown amounts in 1981 and 1982, $400 in 1984, and $500 in 1985 hoping to prevent closure of his agency or establishment of a competing agency. McDonald increased the 1984 payment because Greco told him that he; McDonald, had missed the 1983 payment.

## I
### SPECIAL INQUIRY PROCEEDING
### A. Did Griffies Have a Conflict of Interest?

The first issue is whether Prosecutor Griffies was not authorized to participate in the special inquiry because of a conflict of interest. Greco argues that because of Griffies' unauthorized appearance the information must be set aside, relying upon former RCW 10.40.070(3). We review de novo the trial court's decision not to disqualify the prosecutor. *See State v. Stenger,* 111 Wn.2d 516, 521–22, 760 P.2d 357 (1988).

■ For a conflict of interest to arise under RPC 1.9, the prosecutor must have "previously personally represented or been consulted professionally by an accused with respect to the offense charged" or closely related matters. *Stenger,* 111 Wn.2d at 520. In *Stenger* the prosecutor was disqualified from prosecuting the defendant because he had represented him in a previous criminal action and the court believed that information learned in the previous representation might influence the prosecutor's discretionary decision of whether to seek the death penalty. *Stenger,* 111 Wn.2d at 521.

■ The prosecutor is the legal advisor to all county officers. RCW 36.27.020. As such, Griffies' office represented Greco as the county auditor in numerous cases. However, the record is bereft of any evidence that the office represented Greco in his personal affairs. Because he was not privy to any information personal to Greco, Griffies could not be said to have used improperly any such information in prosecuting Greco. Neither is any information Griffies obtained in the previous cases shown to be interwoven with the facts of this case. Thus, Griffies did not have a conflict of interest.

### B. If Griffies Was Not Authorized To Attend the Special Inquiry, Must the Information Be Quashed?

Even if Griffies was not authorized to attend the special inquiry, the information need not be quashed. RCW 10.27-.080 addresses who may attend both grand juries and special inquiry courts. However, former RCW 10.40.070(3), on which Greco relies, states only that *indictments* must be set aside when an unauthorized person attended the proceeding. The statute does not address special inquiries, or speak to informations.

■■ Under the rules of statutory construction, the specific inclusion of one item in a category excludes implication of other items of the same category (*expressio unius est exclusio alterius*). *State v. Sommerville,* 111 Wn.2d 524,

535, 760 P.2d 932 (1988). By including grand juries, but not special inquiries, the Legislature implicitly chose not to invalidate special inquiry proceedings because of the attendance of unauthorized persons. We decline to extend the invalidation.

## II
### CONSTITUTIONALITY OF RCW 9A.68.010(1)(b)
#### A. Is The Statute Overbroad?

The next issue is whether RCW 9A.68.010(1)(b),[1] the bribery statute, is overbroad. A statute is overbroad if it punishes innocent or constitutionally protected activity. *State v. O'Neill,* 103 Wn.2d 853, 858, 700 P.2d 711 (1985). The *O'Neill* court found that an implied element of corrupt intent was required to uphold RCW 9A.68.010(1)(a). *O'Neill,* 103 Wn.2d at 859. The court then also found that the element was in fact implied, because the Legislature is presumed not to have intended to enact an unjust or unconstitutional law. *O'Neill,* at 859. It is equally reasonable to imply corrupt intent in RCW 9A.68.010(1)(b). The only difference between subsections (a) and (b) is that the former refers to the giver of the bribe and the latter refers to the taker. We see no reason to differentiate between the two sections insofar as the mental element is concerned. Finding that the corrupt intent element is implied in the statute ensures that protected activity will not be punished; with the necessary element thus supplied, the statute is not overbroad.

---

[1]RCW 9A.68.010 reads in pertinent part as follows:

"(1) A person is guilty of bribery if:

"(a) With the intent to secure a particular result in a particular matter involving the exercise of the public servant's vote, opinion, judgment, exercise of discretion, or other action in his official capacity, he offers, confers, or agrees to confer any pecuniary benefit upon such public servant; or

"(b) Being a public servant, he requests, accepts, or agrees to accept any pecuniary benefit pursuant to an agreement or understanding that his vote, opinion, judgment, exercise of discretion, or other action as a public servant will be used to secure or attempt to secure a particular result in a particular matter."

## B. Is the Statute Impermissibly Vague?

We turn next to Greco's contention that the statute is vague because it fails to define "agreement or understanding." "'A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *O'Neill,* 103 Wn.2d at 859. In our view, a person of common intelligence would conclude that "agreement or understanding" as used in the statute means "mutual agreement," a definition cited by Greco in his brief. The statute is not impermissibly vague.

## III
### EQUAL PROTECTION

Greco argues that the State's unbridled discretion in deciding whether to charge a felony under RCW 9A.68.-010(1)(b) (bribery) or a misdemeanor under RCW 42.20-.010(1) and (2) (official misconduct), denied him equal protection. The equal protection guaranty is violated if "the elements of the statutes prohibiting the behavior [are] 'the same or essentially the same.'" *State v. Sherman,* 98 Wn.2d 53, 61, 653 P.2d 612 (1982). It would be unreasonable and inequitable to allow the prosecutor to seek and have imposed varying degrees of punishment for the same criminal acts. *State v. Ensminger,* 77 Wn.2d 535, 536, 463 P.2d 612 (1970). However, equal protection is not violated where the crimes contain different elements. *In re Taylor,* 105 Wn.2d 67, 68, 711 P.2d 345 (1985).

The State did not have unfettered discretion in charging Greco. RCW 42.20.010(1) and (2) do not include the corrupt intent or agreement elements contained in RCW 9A.68.010(1)(b). Because the crimes contain different elements, charging Greco under the bribery statute did not deny him equal protection.

## IV
### ARE RCW 42.20.010 AND 9A.68.010(1)(b) CONCURRENT?

Greco argues that he may be charged only with official misconduct under RCW 42.20.010(3)—which he

labels the special statute—and that he may not be charged with bribery under RCW 9A.68.010(1)(b)—which he labels the general statute. If the statues are concurrent, the special statute applies to the exclusion of the general. *State v. Cann*, 92 Wn.2d 193, 197, 595 P.2d 912 (1979). Statutes are concurrent if "the general statute will be violated in each instance where the special statute has been violated." *State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984). This rule applies even though the special statute includes elements not included in the general statute. *State v. Danforth*, 97 Wn.2d 255, 257–59, 643 P.2d 882 (1982). Any other rule would frustrate the legislative intent to treat the subset of activity (the crime defined by the special statute) apart from the general scheme. *Danforth*, 97 Wn.2d at 257–59.

The statutes in question here are not concurrent. RCW 9A.68.010(1)(b) requires corrupt intent and an agreement to accomplish a particular result. Those elements are not included in the official misconduct statute. Assuming arguendo that the general and special labels apply, the general statute will not be violated in every instance in which the special statute is violated. Therefore, it was proper to charge Greco under the bribery statute.

### V
### Sufficiency of the Findings and Conclusions

Findings of fact are required in judge–tried cases in order to support a conviction, and should separately state the factual basis for the legal conclusions as to each element of the crime. *State v. Russell*, 68 Wn.2d 748, 750, 415 P.2d 503 (1966). Without comprehensive, specific written findings, the appellate court cannot properly review the trial court's resolution of the disputed facts and its application of the law to those facts. *Russell*, 68 Wn.2d at 750–51.

Here, the trial court's bribery findings are inadequate. We cannot be sure the trial court found all the

necessary elements. An agreement by Greco to exercise his discretion in return for cash payments may be inferred from the findings of fact, but it is not clear that the Judge actually concluded that there was such an agreement. The findings also fail to address the element of corrupt intent.[2]

Because the findings are incomplete, we vacate the bribery convictions and remand for entry of further findings. *See Russell,* 68 Wn.2d at 755–56; *State v. Jones,* 34 Wn. App. 848, 851, 664 P.2d 12 (1983).

Because the trial court's findings are inadequate, Greco's challenge to the sufficiency of the evidence to support a conviction on the bribery counts must abide the entry of new findings.

## VI
### OFFICIAL MISCONDUCT

The next issue is whether the one official misconduct charge should be dismissed because Greco returned the messenger service payment. RCW 42.20.010(3) prohibits a public officer from using one in his employ for private benefit. A statute should be interpreted to achieve its purpose, avoiding absurd results. *State v. Stannard,* 109 Wn.2d 29, 36, 742 P.2d 1244 (1987). Here, the crime was complete upon receipt of the money. In fact, however, when Greco returned the funds he explained that he might not need campaign money, but, if needed he would ask for it. Greco's return of the money did not absolve him of the offense and the finding of guilt was proper.

Because the trial court will be confronted with the issues upon remand, we will address Greco's challenges to his sentencing.

---

[2] It is apparent from the trial Judge's memorandum opinion that, in light of *State v. O'Neill,* 103 Wn.2d 853, 700 P.2d 711 (1985), he believed the necessary element of corrupt intent could be supplied by implication. The memorandum opinion, however, cannot fill the void in findings of fact in criminal cases where the omissions consist of the basic elements of the crime.

## VII
### REFUSAL TO SENTENCE AS FIRST–TIME OFFENDER

Greco contends that the trial court erred by declining to treat him as a first–time offender. He argues that the trial court declined to consider first–time offender status only because Greco did not need treatment for substance abuse or mental infirmities. Whether to use the first–time offender provisions of RCW 9.94A.120(5) is within the trial court's discretion. *State v. Welty,* 44 Wn. App. 281, 284, 726 P.2d 472, *review denied,* 107 Wn.2d 1002 (1986); *State v. Boze,* 47 Wn. App. 477, 481, 735 P.2d 696 (1987). Here, the record shows that the trial court carefully weighed the factors for and against first–time offender status. There was no abuse of discretion.

## VIII
### OFFENDER SCORE

Greco argues that his offender score was computed incorrectly because the trial court did not consider all the counts to be the same offense under RCW 9.94A.400.[3]

The trial court's determination of what is the same criminal conduct is reviewed for abuse of discretion and misapplication of the law. *State v. Collicott,* 112 Wn.2d 399, 404, 771 P.2d 1137 (1989).

Crimes are part of the same criminal conduct if they arise from the same course of conduct and are intimately related or if "one crime furthered the other and if the time and place of the two crimes remained the same." *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). Neither are crimes involving different victims the same criminal conduct. *Dunaway,* 109 Wn.2d at 215.

---

[3]RCW 9.94A.400(1)(a) provides in pertinent part as follows: "[I]f the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

Greco's briberies involved three agencies and five individuals. The trial court did not err in computing Greco's offender score.

## Conclusion

The judgment and sentence for the official misconduct count (RCW 42.20.010(3)) are affirmed. The judgment and sentence on the bribery counts are vacated and remanded for entry of further findings of fact and conclusions of law, after the filing of which with this court, their sufficiency, and the sufficiency of the evidence, will be addressed.

ALEXANDER, C.J., and MITCHELL, J. Pro Tem., concur.

Review denied at 114 Wn.2d 1027 (1990).