[No. 28503-3-I.   Division One.   January 10, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTEMAS McHENRY MALONE, *Appellant.*

---

430

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Tod J. Bergstrom, Deputy,* for respondent.

PEKELIS, J. — Artemas Malone appeals a conviction for cocaine possession, assigning error to the trial court's denial of his CrR 3.3 motion to dismiss based on an alleged speedy trial violation. In the alternative, Malone contends that he was denied effective assistance of counsel on his motion to dismiss. He also contends that the evidence was insufficient to support his conviction. We affirm.

I

On October 2, 1989, the police arrested Malone after they discovered in his car and in plain view a clear glass vial, a piece of tubing, and a small, clear plastic baggie containing white residue. The results of a postarrest search revealed a syringe and a crack pipe.

A complaint was filed on October 2, 1989, in the Aukeen District Court charging Malone with misdemeanor possession of an injection device and possession of dangerous drugs. On March 12, 1990, the complaint was dismissed without prejudice.

On September 21, 1990, the King County Prosecutor filed an information charging Malone with felony possession of cocaine pursuant to RCW 69.50.401(d). Malone was arraigned in superior court on October 17, 1990. He was not held in custody following arraignment.

The omnibus hearing, originally set for October 31, 1990, was held on November 14, 1990. At that time, Terri Ann Pollock, Malone's attorney, signed a "Stipulation and Waiver of Omnibus Hearing" (Stipulation). On the Stipulation, Pollock checked the preprinted box for a pretrial motion to dismiss and wrote "speedy trial" next to the box.

On the same day, David Kraft, an attorney substituting for Pollock, signed Malone's order setting trial date. This order set the trial for January 25, 1991.[1] It is undisputed that 26 days of Malone's "speedy trial" period elapsed while the misdemeanor charges were pending in district court. As a result, the speedy trial period actually expired on January 4, 1991.

At the trial setting, the deputy prosecutor did not inform the court that the trial date had been set beyond the speedy trial period. The State had requested Malone's "docket" from the district court on August 3, 1990, in order to calculate the lapse of speedy trial time; a notation on the cover of the State's file indicated that 26 days had elapsed. The record does not indicate why the deputy prosecutor failed to bring this issue to the court's attention.

On February 7, 1991, Malone moved for the first time, under CrR 3.3, to dismiss based on a violation of the speedy trial rules. Defense counsel informed the court that the State had not provided her with the district court docket as part of discovery. The record does not indicate when defense counsel first learned that Malone originally had been charged in district court.[2]

At the pretrial hearing, the State argued that Malone had waived his right to object under CrR 3.3(f)(1) when he failed to move for a new trial date within 10 days of the trial setting. The court accepted the State's argument and denied the motion to dismiss. Malone then moved to dismiss, contending that counsel had been ineffective by waiving the objection to the trial date. The court denied the motion.

At trial, Judith Nickels, a Washington State Crime Laboratory forensic scientist, testified that she had analyzed the

---

[1] The order also provided:

"I further understand that failure to object to the date set for trial within 10 days of today will waive any objection that the above date is in violation of CrR 3.3."

[2] However, Malone's counsel on appeal suggested at oral argument that Pollock did not learn of this issue until January 31, 1991, when the King County Department of Adult Detention responded to her request for Malone's incarceration dates.

residue in the plastic baggie for a controlled substance and determined it to be cocaine. Nickels testified that she did not weigh the residue but, based on a visual inspection, she determined the amount to be less than one-tenth of a gram. The jury convicted Malone as charged. He was subsequently sentenced to 14 months' confinement.

## II
### WAIVER OF SPEEDY TRIAL

Malone contends that the trial court should have granted his CrR 3.3 motion to dismiss for violation of his speedy trial rights. CrR 3.3(c)(2) provides that a defendant who is not in custody shall be brought to trial not later than 90 days after the date of arraignment, "less time elapsed in district court". A defendant who objects to the trial date on speedy trial grounds must move for a proper trial date within 10 days of receiving notice of the trial date. CrR 3.3(f)(1). CrR 3.3(f)(1) further provides:

> Failure of a party, for any reason, to make such a motion shall be a waiver of the objection that a trial commenced on such date . . . is not within the time limits prescribed by this rule.

In addition, Washington courts have established an outer time limit for objections on speedy trial grounds — a known speedy trial violation must be objected to before the speedy trial period expires to avoid violation of the rule or it is deemed waived. *See State v. Becerra*, 66 Wn. App. 202, 206, 831 P.2d 781 (1992) (holding that the defendant waived the right to object that the trial had not commenced within the speedy trial period when counsel objected after the speedy trial period had expired); *see also State v. Austin*, 59 Wn. App. 186, 200, 796 P.2d 746 (1990).

The ultimate responsibility falls upon the trial court to ensure a trial in accordance with CrR 3.3. CrR 3.3(a);[3] *State v. Lemley*, 64 Wn. App. 724, 729, 828 P.2d 587, *review denied*, 119 Wn.2d 1025 (1992). However, defense counsel also has a

---

[3]CrR 3.3(a) provides:
"It shall be the responsibility of the court to ensure a trial in accordance with this rule to each person charged with having committed a crime."

duty to protect a client's speedy trial rights. *See State v. Raper*, 47 Wn. App. 530, 538, 736 P.2d 680 (explaining that CrR 3.3(f)(1) places some responsibility on defense counsel to assert a client's speedy trial rights or they are waived), *review denied*, 108 Wn.2d 1023 (1987); *see also State v. White*, 94 Wn.2d 498, 502-03, 617 P.2d 998 (1980).

Malone's principal argument is that he did not waive his right to a speedy trial because his counsel did not know of the time elapsed in district court and, thus, was unable to timely object.[4] However, it is appellant's duty to perfect the record so that the appellate court has all relevant evidence before it. *State v. Garcia*, 45 Wn. App. 132, 140, 724 P.2d 412 (1986); *see* RAP 9.2(b). Here, the record is silent as to how and when defense counsel first learned of the 26-day lapse.[5]

When defense counsel first learned of the lapse is significant for two reasons. First, if defense counsel knew of the speedy trial violation at the time of trial setting, under CrR 3.3(f)(1), she had a duty to move for a proper trial date within 10 days to avoid waiver. Second, if defense counsel learned of the speedy trial violation at any point *before* the speedy trial period expired, she had a duty to raise the issue *before* the period expired to avoid waiver. *See Becerra*, 66 Wn. App. at 206 (citing *Austin*, at 200; *Raper*, at 538).

Malone does not dispute that the information relating to the amount of time elapsed in district court was easily available nor does he dispute that he was aware that he originally had been charged in district court. In fact, when defense counsel moved to dismiss for ineffective assistance of counsel, she admitted that, "[i]t [the trial date] was something that I did not pay close enough attention to."

---

[4]We note that Malone does not challenge the speedy trial violation on constitutional grounds and, further, that the record indicates no basis for such a challenge.

[5]We reject the suggestion that the record establishes that Pollock did not learn of the lapse until January 31, 1991, the same date she received the response to her request for Malone's incarceration dates. Certainly, counsel was aware of the fact that a speedy trial issue existed prior to January 31, 1991, or she would not have requested the information.

We hold that, as part of protecting a client's speedy trial rights, defense counsel has an affirmative duty to investigate those easily ascertainable facts that are relevant to setting the trial date within the speedy trial period. If an untimely speedy trial objection is made because of the failure to discover such easily ascertainable facts, it will be deemed waived.

Just as defense counsel cannot wait to object to a known speedy trial violation until after the speedy trial period expires, defense counsel cannot wait to investigate easily ascertainable facts relevant to setting the correct trial date until after the speedy trial period expires.

Malone relies on *State v. Raper, supra,* for the proposition that he did not waive his right to object because he was unaware of the 26-day lapse until after the CrR 3.3(f)(1) 10-day waiver period passed. However, the facts of *Raper* are clearly distinguishable. In *Raper,* at 530, the court set the original trial date within the speedy trial period. However, on the same day as the trial setting, Raper's speedy trial expiration date was erroneously extended beyond the speedy trial period as a result of clerical error. *Raper,* at 532. Unaware of this clerical error, Raper's counsel did not object to a subsequent trial date set beyond the correct speedy trial expiration date until the speedy trial period had passed. *Raper,* at 532. The record did not indicate when counsel first discovered the correct expiration date had expired. *Raper,* at 532.

In dicta, the court rejected the State's argument that Raper had waived his speedy trial rights under CrR 3.3(f)(1) because defense counsel had been unaware that the subsequent trial date had been incorrectly set until after the 10-day waiver period had passed. *Raper,* at 539. The court noted that defense counsel did object within 10 days of learning that the trial date was set beyond the speedy trial period. *Raper,* at 539.

While Raper's defense counsel could not have been expected to know that a clerical error resulted in the establishment of an incorrect speedy trial expiration date, Malone's counsel should be expected to know those easily ascertainable facts relevant to the correct trial date. In fact, Malone

does not argue that defense counsel should not have been expected to know that he originally had been charged in district court.

Thus, by failing to investigate the time elapsed in district court and assert Malone's speedy trial rights before the speedy trial date expired, Malone waived the right to object to the speedy trial violation.[6]

Rather than address the fact that defense counsel failed to ensure that his speedy trial rights were protected by conducting a timely investigation into the district court charge, Malone contends that his failure to object to the trial date should be excused because the State failed to inform the court that the trial date had been set in violation of the speedy trial rules.

Malone argues that the duty imposed upon defense counsel to disclose speedy trial facts to the court should be imposed on the prosecution as well. Recognizing that no Washington authority supports such a rule, Malone relies on the American Bar Association (ABA) standards relating to speedy trial.[7] Standard 12-1.2 provides:

> Control over the trial calendar should be vested in the court. . . . *The prosecuting attorney should also advise the court of facts relevant in determining the order of cases on the calendar.*

(Italics ours.) 2 American Bar Ass'n, *Standards for Criminal Justice* 12.8 (2d ed. 1980). However, Malone fails to note the comment to the standard, which states:

---

[6]The State contends that Pollock's handwritten "speedy trial" notation on the November 14, 1990, Stipulation evidences that defense counsel *actually* knew that Malone had a "potentially meritorious" speedy trial motion. Thus, the State argues that, because Malone failed to move for a new trial date within 10 days after the trial date was set, under CrR 3.3(f)(1) he waived his right to object to the speedy trial violation.

Because Malone fails to provide any reason why his knowledge that he had been originally charged in district court should not be imputed to defense counsel, we need not decide whether Pollock's notation alone supports a finding that Malone actually had knowledge of the 26-day lapse on November 14, 1990.

[7]In cases where CrR 3.3 is silent, Washington courts have looked to the ABA standards relating to speedy trial as an interpretative guide. *State v. Fladebo*, 113 Wn.2d 388, 392, 779 P.2d 707 (1989).

> To the extent that the prosecutor has *a superior knowledge* of the complexities of each case, the prosecutor should bring these facts (and other relevant facts, such as the public interest in speedy trial as to certain cases) to the attention of the court.

(Italics ours.) *Standards for Criminal Justice*, at 12.9-12.10.

■ We reject the contention that here the State had "a superior knowledge" or a singular duty which overrode defense counsel's obligation to learn easily ascertainable facts relevant to setting the trial date within the speedy trial period. Because the information about the time lapsed in district court was readily available to the defendant, this is not a situation where the prosecutor necessarily had a superior knowledge.[8] Hence, the deputy prosecutor's apparent negligence in failing to note the speedy trial information on the State's file was not a critical event.[9]

In conclusion, because Malone waived his speedy trial rights, the trial court correctly denied Malone's motion to dismiss for a violation of the speedy trial rules.

### III
### INEFFECTIVE ASSISTANCE OF COUNSEL

Malone next contends that, even if he waived his speedy trial rights, the trial court should have granted his motion to dismiss based on the ineffective assistance of counsel in waiving the speedy trial objection.

■ The defendant must satisfy two elements to prevail on a federal and state constitutional claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687,

---

[8]Despite Malone's claim that the State did not produce the district court docket in discovery, the record does not indicate that it was ever requested. Moreover, we reject the suggestion that this information falls within "exculpatory" material which the prosecutor is obligated to produce sua sponte.

[9]We cannot imagine what would motivate a prosecutor to mislead the court about the correct trial date. Obviously, it is in the State's best interests to ensure that the trial date is set within the speedy trial period. In fact, the State requested the district court docket for this very purpose. It is the harsh remedy of dismissal, a potential windfall for the defendant, that has led Washington courts to hold that the defendant must object to a known speedy trial violation in time to avoid the violation, or it is deemed waived.

80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Thomas,* 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *State v. Thompson,* 69 Wn. App. 436, 441, 848 P.2d 1317 (1993). First, the defendant must show that counsel's performance was deficient by showing that counsel's conduct fell below an objective standard of reasonableness. *Thompson,* at 440. Second, the defendant must show that counsel's deficient performance resulted in prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Thompson,* at 440. However, we need not address both elements if the defendant makes an insufficient showing as to one element. *Thompson,* at 440.

Malone has failed to prove actual prejudice from counsel's inadvertent waiver of the right to object to the speedy trial violation. A timely objection would not have changed the result. Instead of dismissing the charges because of the speedy trial violation, the court would have merely reset the trial date within the speedy trial period. Thus, the trial court correctly determined that Malone was not denied effective assistance of counsel.

## IV
### SUFFICIENT EVIDENCE TO SUPPORT COCAINE POSSESSION CONVICTION

Finally, Malone contends that the State failed to produce sufficient evidence to convince the trier of fact beyond a reasonable doubt that Malone possessed cocaine under RCW 69.50.401(d).[10] Malone cites to out-of-state case law and asks us to read into the statute a requirement that, to be charged with possession, there must be a measurable or usable amount of cocaine. Applying this requirement to the facts presented here, Malone argues that his possession of residue contained in the baggie did not constitute possession because the residue was not of a measurable or usable amount, and thus, the evidence was insufficient to support the conviction.

---

[10]Malone was convicted pursuant to RCW 69.50.401(d) which provides that "[i]t is unlawful for any person to possess a controlled substance."

Malone's argument is contrary to Washington case law. In *State v. Williams*, 62 Wn. App. 748, 749-50, 815 P.2d 825 (1991), *review denied*, 118 Wn.2d 1019 (1992), Williams was charged with cocaine possession under RCW 69.50.401(d). In *Williams*, possession was based on residue in the bowl of a crack pipe, which had been found on Williams and determined to be cocaine. *Williams*, at 749-50. No other cocaine was found on Williams. *Williams*, at 749. The trial court dismissed the charges on the grounds that RCW 69.50.412(1), the drug paraphernalia statute, and RCW 69.50.401(d), the possession statute, were concurrent statutes. *Williams*, at 750. The trial court reasoned that the Legislature intended the presence of residue in drug paraphernalia to be evidence of only a paraphernalia violation. *Williams*, at 750. This court reversed and held that RCW 69.50.412(1) and RCW 69.50-.401(d) are not concurrent. *Williams*, at 754. The court noted that RCW 69.50.401(d) does not require that a minimum amount be possessed in order to sustain a conviction.[11] *Williams*, at 751; *State v. Larkins*, 79 Wn.2d 392, 394, 486 P.2d 95 (1971).

Thus, we hold that RCW 69.50.401(d) does not require that a minimum amount of drug be possessed, but that possession of *any* amount can support a conviction.[12]

---

[11]Malone's contention that *State v. Larkins*, 79 Wn.2d 392, 394, 486 P.2d 95 (1971) supports the proposition that residue incapable of measurement cannot support a possession conviction is untenable. In *Larkins*, the Washington Supreme Court held under the former Uniform Narcotic Drug Act, which provided that it was unlawful to "possess" any narcotic drug, that it was illegal to possess *any* unauthorized amount of narcotic. *Larkins*, at 394. The court declined to adopt a "usable amount test". *Larkins*, at 394. ·

Because Larkins possessed a "measurable amount of a narcotic", the court upheld his possession conviction. *Larkins*, at 395. However, the fact that the narcotic was "measurable" was not dispositive. *Larkins* clearly held that possessing *any* amount of narcotic could sustain a conviction.

[12]In so holding, we note that even if we believe that punishing defendants for the possession of drug residue is a poor allocation of resources, it is within the province of the Legislature to decide whether the possession of a minute quantity of a controlled substance should be punished under the statute. *See State v. Cook*, 26 Wn. App. 683, 686, 614 P.2d 215 (1980) (stating the Legislature's power to define crimes is "virtually unlimited").

■ On review, we must view the evidence in the light most favorable to the State and determine whether it is sufficient to convince a rational trier of fact of all of the elements of the crime beyond a reasonable doubt. *State v. Bower*, 28 Wn. App. 704, 709, 626 P.2d 39 (1981) (citing *State v. Green*, 94 Wn.2d 216, 219, 616 P.2d 628 (1980)). Based on the evidence presented·that the residue was cocaine, sufficient evidence existed to convict Malone of cocaine possession.

Affirmed.

WEBSTER, C.J., and FORREST, J. Pro Tem., concur.