FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 46

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44285-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ZACHARY CRAWFORD, | |
| Appellant. | |

BJORGEN, A.C.J. — Zachary Crawford appeals his conviction for methamphetamine possession, claiming that (1) the State and the trial court deprived him of his right to a unanimous jury verdict, (2) the prosecutor committed misconduct, (3) the State improperly introduced opinion about his guilt, (4) the State presented insufficient evidence to convict him because our court should require proof that he possessed a minimum quantity of a controlled substance, and (5) he received ineffective assistance of counsel. We affirm.

## FACTS

Late one evening in September 2012, a Washington State Department of Corrections (DOC) officer arrived at Crawford's doorstep with two City of Vancouver police officers.

Crawford was under DOC supervision for a prior sex offense and neighbors had apparently lodged complaints, requiring a home visit.[1]

The officers asked Crawford which bedroom in the residence belonged to him, and Crawford directed them to a room he shared with a roommate. Crawford identified the areas of the room under his control, which included his bed, a closet, and part of a dresser. The officers searched these areas. In Crawford's bedding the officers found a plastic bag containing a small, yet nonetheless visible, amount of white crystalline substance. The officers suspected the substance was methamphetamine, a suspicion confirmed by both a field test and a later laboratory analysis by the Washington State Patrol Crime Lab.

The officers arrested Crawford. After Crawford was given Miranda[2] warnings and waived his rights, the officers asked him about the plastic bag. Crawford acknowledged that the bag belonged to him and stated that it had contained $20 worth of methamphetamine that he had purchased the day before.

The State charged Crawford with possession of a controlled substance "on or about September 5, 2012," the day the officers seized the methamphetamine from his room. Clerk's Papers (CP) at 1.

At Crawford's trial, the State introduced testimony about the discovery of the methamphetamine in Crawford's bed. The State also introduced testimony about the statements Crawford made after waiving his Miranda rights. In addition, the State asked one of the officers

---

[1] The parties did not discuss the reason for the visit in front of the jury to avoid prejudicing Crawford.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 44285-0-II

to testify about his experience with what constituted a usable amount of the drug. The officer responded,

> Well, it -- for different people, it's a different amount. For someone who has a large habit, it could be different from someone who has a smaller habit. Someone who has a lot of money, a use sm -- a user amount is probably a lot more than someone who doesn't have much money at all. They obviously use a smaller amount. In the years of my experience, I've noted speaking to people while under cover and also in uniform, the one thing that I do get from users is that if they're willing to keep it and possess it, then it's a useable amount. If, for someone who -someone -- if it wasn't enough for them, they wouldn't keep it around at the risk of getting in trouble or arrested, especially if they're on probation or parole. And that's basically what I go off of for user amount.

Verbatim Report of Proceedings (VRP) (Nov. 26, 2012) at 59-60.

Crawford testified that he had unwittingly possessed the methamphetamine the police found, although he admitted that he bought the methamphetamine the day before the police searched his house. Crawford claimed that he thought that he had smoked all the substance in the bag, that he had simply failed to throw the bag away when finished with it, and had forgotten that he still had the bag. Crawford proposed an unwitting possession jury instruction, which the trial court gave.

During closing argument the State made clear that Crawford's prosecution arose out of the possession of the methamphetamine the police found in Crawford's room at the time of the search, stating that:

> I have to prove the elements to you beyond a reasonable doubt and that's – that's what I've done. On or about September 5th, 2012, here in Clark County, Washington, the Defendant possessed a controlled substance. We know it was around September 5th. The officers came to his house on that date around midnight, September 5th/September 6th. . . . We know it was the Defendant. He was – he was there and the officers identified him. . . . We know it was methamphetamine, that substance recovered from his – from his bed.

3

No. 44285-0-II

VRP (Nov. 26, 2012) at 105-06. The prosecutor also addressed Crawford's claim of unwitting

possession, arguing,

> So, the element that's left, the issue that's left is possession. Did the Defendant possess it? Well, it was found in his bedroom, it was found in his bed. As -- as he admitted to the officers, "That's my room, that's my bed." When they found it, when Officer Gutierrez confronted him with it, he said, "Yeah, that's my methamphetamine." He even admitted where he got it. He bought it a couple days ago for $20.00. "That's mine."
>
> The Defense wants to say unwitting possession because he -- he says he didn't realize he still had some there. Well, that's not unwitting possession. That's sort of like saying you didn't realize there were still some drops left in your Pepsi can and when you pour it out, that's still Pepsi. Well, if you pour that out, that's still methamphetamine. And he knew it was there, he knew where he got it, he used it, he knew exactly what it was. That's possession of a controlled substance. That's why I'm asking you to convict. The State has proven it beyond a reasonable doubt. I am now asking you to do your civic duty and convict this Defendant. Thank you.

VRP (Nov. 26, 2012) at 106-07. The prosecutor later returned to Crawford's unwitting

possession defense in rebuttal, stating,

> It's not a discarded item. It's an item that he left in his bed after smoking and what did — what he testified to, after he purchased that bag, he had smoked some of it in his bedroom and then he left it there. It kind of boils down to this: he admitted he bought meth, he tells the police the location where it's found is — is his room. . . . And when confronted by Officer Gutirrez, he didn't say, "I thought that was all gone, I didn't realize anything was left." He said, "Yeah, that's mine. I bought it at – I bought it a day ago."

VRP (Nov. 26, 2012) at 110-11.

The jury returned a verdict of guilty, and Crawford timely appeals.

ANALYSIS

Crawford contends that (1) the evidence about multiple acts of methamphetamine

4

No. 44285-0-II

possession deprived him of a unanimous jury verdict, (2) the prosecutor committed misconduct by misstating the law of unwitting possession and its burden of proof, (3) the officer's testimony about a usable amount of controlled substances constituted impermissible testimony about his guilt, (4) the State failed to show he possessed a usable amount of drug, and (5) his trial counsel rendered ineffective assistance. We find no merit in any of Crawford's claims and affirm.

## I. JURY UNANIMITY

Crawford first argues that the State violated his right to a unanimous jury verdict. He contends that the evidence indicated he possessed methamphetamine on two different occasions and that the jury could have returned a verdict of guilty based on either of these instances, depriving him of a unanimous verdict on a criminal act. Because Crawford alleges a constitutional violation, we review his claim de novo. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). We disagree that the evidence at trial involved discrete instances of possession and therefore reject Crawford's argument.

Washington's constitution requires the jury to unanimously agree to a guilty verdict. *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007); WASH. CONST. art. I, § 21. This requires that the jury agree unanimously on a specified criminal act. *State v. Crane*, 116 Wn.2d 315, 324-25, 804 P.2d 10 (1991), *overruled on other grounds in Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). Accordingly,

> [w]hen the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act.

*State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007).

5

The law distinguishes between a single, continuing offense and "'several distinct acts' each of which could be the basis of a criminal charge" for purposes of jury unanimity. *Crane*, 116 Wn.2d at 326 (quoting *State v. Petrich*, 101 Wn.2d 566, 571, 683 P.2d 173 (1984) (internal quotation marks omitted). When considering a continuous course of conduct, a jury need not unanimously agree on any particular criminal act or incident so long as it unanimously agrees the course of conduct occurred. *Crane*, 116 Wn.2d at 330. We examine a variety of factors "in a commonsense manner" to determine if the State alleges multiple distinct acts or a single course of conduct. *State v. Hadran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989); *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). These factors include whether the charges involved different times, places, materials, types of possession (actual or constructive), and whether the defendant engaged in the acts with a single purpose. *Hadran*, 113 Wn.2d at 17; *Love*, 80 Wn. App. at 361; *State v. King*, 75 Wn. App. 899, 903, 878 P.2d 466 (1994).

The evidence at Crawford's trial did not implicate his right to a unanimous verdict. Crawford admitted that he purchased the bag containing the methamphetamine, brought it to his room, smoked some of the methamphetamine, and left the remainder there until the police seized the bag. Crawford possessed the same methamphetamine in the same container in the same place over the course of two days so that he could have methamphetamine for his own personal use. Crawford thus admitted to a single, continuous, and unbroken instance of possession. This continual methamphetamine possession can sustain a single charge. *See Love*, 80 Wn. App. at 362 (two acts of possession considered continuous course of conduct when possession served the single objective to make money trafficking narcotics). A separate unanimity instruction was not required.

## II. PROSECUTORIAL MISCONDUCT

Crawford next contends that the prosecutor committed misconduct by arguing that Crawford had knowingly possessed the methamphetamine found in his room and by suggesting that the jury should disregard the date and time element of the charging document. We find no misconduct.

A criminal defendant has a constitutional right to a fair and impartial trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). A prosecutor may deprive a defendant of this right by engaging in misconduct. *Davenport*, 100 Wn.2d at 762. To demonstrate prosecutorial misconduct, a defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Where the defendant fails to object to the alleged improper conduct at trial, he or she waives any claim of misconduct unless the impropriety was flagrant and ill-intentioned such that a curative instruction would not have obviated any prejudice from the misconduct. *Emery*, 174 Wn.2d at 760-61.

We determine whether a prosecutor has made improper argument by examining the total context of the trial, the issues in the case, the evidence, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A prosecutor makes improper argument by mischaracterizing the law in general or the law of the case as stated in the jury instructions. *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). However, we give prosecutors "wide latitude" in making arguments, and a prosecutor may permissibly draw reasonable inferences from the record. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011).

7

Crawford alleges the first instance of improper argument occurred when the prosecutor "misstated the law of . . . unwitting possession" by arguing that Crawford knew he possessed methamphetamine because he had acknowledged purchasing the substance the day before. Br. of Appellant at 11. Specifically, Crawford contends this argument ran contrary to the trial court's instruction on unwitting possession and the general law of unwitting possession, which allows the defense when a defendant does not know he or she has a controlled substance or does not understand the nature of a substance he or she acknowledges having. *City of Kennewick v. Day*, 142 Wn.2d 1, 10-11, 11 P.3d 304 (2000). The prosecutor made the argument specifically to rebut one of the elements of unwitting possession, that Crawford did not understand the nature of the substance in his possession. The prosecutor's argument simply noted that Crawford had admitted to purchasing the methamphetamine and asked the jury to infer that Crawford could not reasonably believe that his failure to promptly smoke all of it somehow transformed the remainder into a substance he could legally possess. The prosecutor addressed the other prong of the unwitting possession defense with a different portion of his argument. Viewed in the context of the total argument and the issues in this case, the prosecutor was responding to Crawford's defense using permissible inferences from the record.

Crawford also alleges that the prosecutor improperly argued that the jury could convict him without finding an essential element of the crime, namely the date of possession. The to-convict instruction incorporated the date of Crawford's possession, on or about September 5, 2012. The State, therefore, bore the burden of proving that Crawford possessed

8

methamphetamine on or about that date beyond a reasonable doubt. *State v. Hickman*, 135 Wn.2d 97, 105, 954 P.2d 900 (1998) (the State bears the burden of proving all elements articulated in jury instructions). The prosecution would have committed misconduct by suggesting it did not have that burden. *Walker*, 164 Wn. App. at 736. However, the record flatly contradicts Crawford's contention. The prosecutor explicitly acknowledged that the State needed to prove Crawford possessed the methamphetamine on or about September 5, 2012, and then argued that it had done so. The prosecutor did not misstate the law and did not commit misconduct.

### III. OPINION TESTIMONY

Crawford also alleges that the State improperly introduced opinion testimony about his guilt from one of the testifying officers. We decline to reach the merits of Crawford's claim because he did not raise it in the trial court.

Normally we do not review claims of error raised for the first time on appeal, and Crawford did not object to the allegedly objectionable testimony at trial. RAP 2.5(a); *State v. Montgomery*, 163 Wn.2d 577, 595-96, 183 P.3d 267 (2008) (quoting *State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007)). A limited exception to this general rule exists for "manifest error[s] affecting a constitutional right." RAP 2.5(a)(3). While impermissible opinion testimony may infringe on a defendant's constitutional right to a jury trial, the admission of improper opinion testimony is not manifest within the meaning of RAP 2.5(a)(3) if the trial court properly instructs the jury that they "'are the sole judges of the credibility of witnesses, and . . .

are not bound by expert witness opinions." *Montgomery*, 163 Wn.2d at 595-96, 183 (quoting *Kirkman*, 159 Wn.2d at 937) (internal quotation marks omitted); *State v. Curtiss*, 161 Wn. App. 673, 697, 250 P.3d 496 (2011). The court gave those instructions to Crawford's jury, and he makes no showing to overcome the presumption that the jurors followed them. *Kirkman*, 159 Wn.2d at 937; *Curtiss*, 161 Wn. App. at 697 (citing *Montgomery*, 163 Wn.2d at 596). Under RAP 2.5(a), Crawford does not have a right to claim this error for the first time on appeal.

IV. SUFFICIENCY

Crawford next contends that we should impose a common law element requiring the State to prove that he possessed a usable amount of contraband. He contends that the State failed to do so here and that we should therefore order the trial court to reverse his conviction and dismiss the charge with prejudice.

We decline to consider Crawford's plea to add a common law requirement of usability to possessory offenses, because we do not consider inadequately briefed arguments. RAP 10.3(a)(6); *Fishburn v. Pierce County Planning & Land Servs. Dep't*, 161 Wn. App. 452, 473, 250 P.3d 146 (2011). Crawford appears to identity two reasons for adopting some kind of minimal amount element, but does not adequately brief either. First, Crawford cites, extensively, the existence of such elements in the possessory offenses of Washington's sister states. Crawford provides no reasoned argument as to why the mere existence of those elements in sister jurisdictions should compel our court to impose a similar one in this case. Washington's legislature has made a policy choice, and we cannot overrule the people's representatives simply because legislatures in sister jurisdictions have made a different one. *See State v. Malone*, 72 Wn. App. 429, 439 n.12, 864 P.2d 990 (1994) (holding that there is no minimum amount

10

requirement for possession, in part because "it is within the province of the Legislature to decide whether possession of a minute quantity of a controlled substance should be punished under the statute.")

Second, Crawford offers policy reasons for requiring a minimum amount of a controlled substance. He claims that the cost and expense of prosecuting and incarcerating those convicted of possessing small amounts of controlled substances necessitates a minimal amount element in possession crimes. Crawford, however, offers no evidence that would allow us to make a decision based on these considerations, such as the number of such prosecutions or the actual expenses involved. Assuming that such a policy choice is within our authority, Crawford has not supplied the basis on which we could make it.[3]

---

[3] Even if we were to address this claim on the merits, Division One of our court rejected essentially the same argument in *Malone*, 72 Wn. App. at 438-39. Malone "cite[d] . . . out-of-state case law," just as Crawford does and "ask[ed] [Division One] to read into the statute a requirement that, to be charged with possession, there must be a measurable or usable amount of" a controlled substance, just as Crawford asks our court to do. *Malone*, 72 Wn. App. at 438. Division One rejected Malone's argument as incompatible with Washington law after noting that the statutes defining the crime of possession in Washington do not make the amount the defendant possessed relevant to a conviction and that "possess[ion] of *any* amount can support a conviction." *Malone*, 72 Wn. App. at 439 (emphasis in original).

Crawford notes that the legislature has "authorized the judiciary to supplement penal statutes with common law, so long as the court decisions are 'not inconsistent with the Constitution and the statutes of this state'" and asks our court to exercise that power here. Br. of Appellant at 19 (quoting RCW 9A.04.060). In making this argument Crawford misses the import of *Malone*, which recognized that the legislature intended to strictly forbid any possession of a controlled substance. The legislature has signaled its approval of *Malone* as it has not amended the possession statutes to add a minimum quantity element in response. *In re Custody of A.F.J.*, 179 Wn.2d 179, 185-86, 314 P.3d 373 (2013). Enacting the common law elements Crawford seeks would be inconsistent with the statutes of this state. Crawford's argument, therefore, asks us to make the sort of policy choice reserved to the legislative authority.

Absent a common law minimum quantity element, the State unquestionably presented sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Crawford had possessed methamphetamine, a controlled substance. *State v. Mau*, 178 Wn.2d 308, 312, 308 P.3d 629 (2013). Police seized the substance at issue from Crawford's bed. Multiple tests confirmed the substance is methamphetamine. Crawford himself admitted to purchasing and possessing the methamphetamine. Sufficient evidence supports his conviction.[4]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Crawford contends that he received ineffective assistance of counsel because his attorney failed to object to the officer's opinion testimony and the prosecutor's closing arguments. We review these claims de novo and hold that Crawford's counsel provided effective assistance. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

A criminal defendant has the right to effective assistance by his or her counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We begin with "'a strong presumption that counsel's performance was reasonable.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). To overcome this presumption, the defendant must show that counsel performed deficiently and that this deficient performance prejudiced him or her. *Grier*, 171 Wn.2d at 32-33 (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). To show deficient performance, the defendant must show "that 'there is no conceivable

---

[4] Even if we accepted Crawford's argument, the evidence at trial showed he possessed "a measureable amount." Br. of Appellant at 24. Officers testified that the bag they found contained a visible quantity of methamphetamine, which would make it measureable. Further, Crawford testified that he would have "licked the bag clean" if he knew it had methamphetamine in it. VRP (Nov. 26, 2012) at 83. This indicates Crawford could and would have used the methamphetamine had he later found it, providing sufficient evidence to convict him even where a minimal, usable amount is required for a conviction.

legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Demonstrating prejudice requires the defendant to show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862).

Crawford claims that one of the officers expressed an opinion as to Crawford's guilt by testifying that if a user is

> willing to keep it and possess it, then it's a usable amount. . . . [I]f it wasn't enough for them, they wouldn't keep it around at the risk of getting in trouble . . . especially if they're on probation or parole.

VRP (Nov. 26, 2012) at 60; Br. of Appellant at 17. For purposes of this analysis, we assume without deciding that this testimony improperly expressed an opinion. Crawford's counsel did not object to this testimony. Failing to object to the admission of improper evidence can constitute deficient performance. *State v. Hendrickson*, 138 Wn. App. 827, 833, 158 P.3d 1257 (2007). However, Crawford's attorney cross-examined the officer about the same subject. Crawford's attorney therefore appears to have decided not to object and instead address the impropriety in other ways. *State v. Kloepper*, 179 Wn. App. 343, 355-356, 317 P.3d 1088, *review denied*, 180 Wn.2d 1017 (2014) (holding that the decision not to object is generally considered a legitimate trial tactic to avoid emphasizing damaging evidence). This was a legitimate tactical choice and, as such, cannot serve to show deficient performance. *Kloepper*, 179 Wn. App. at 355-56.

Similarly, Crawford's counsel did not object to the prosecutor's closing statements. A defense attorney's failure to object to impermissible closing argument can constitute deficient

13

No. 44285-0-II

performance that might prejudice the defendant. *See State v. McFarland*, 127 Wn.2d 322, 337 n.4, 899 P.2d 1251 (1995). However, as held above, the prosecutor did not commit misconduct, and Crawford's attorney had nothing to object to. Further, as with Crawford's claim of ineffective assistance related to the opinion testimony, his attorney appears to have made a tactical decision to address the prosecutor's argument during her own closing, where she specifically used the State's comments as a springboard to present her theory of the case. Again, we find no ineffective assistance based on what trial counsel saw as a legitimate trial tactic.

CONCLUSION

We find no merit in any of Crawford's claims and affirm his conviction for possession of methamphetamine.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

HUNT, J.

LEE, J.

14